IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TERRY LEE NICKENS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-13-1430 |
| STATE EMPLOYEES CREDIT | * | |
| UNION, INC., et al. | * | |
| Defendants. | * | |
| | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

Plaintiff Terry Lee Nickens filed a fifteen-count Second Amended Complaint (ECF No. 25) against corporate defendant State Employees Credit Union, Inc. ("SECU") and individual defendants Carlos M. Edwards, Rodney H. Staatz, Tracy Marie Templeton-Shank, and Christopher X. Groshko on October 25, 2013, alleging discrimination on the basis of age and race. Specifically, Plaintiff contends she was targeted and eventually terminated by Defendants as part of a program to eliminate both African American employees and employees over forty years of age from SECU. In response to the fifteen-count Second Amended Complaint, Defendants filed an Answer (ECF No. 26) containing specific admissions and denials along with a list of affirmative defenses. Plaintiff then filed a Motion to Strike (ECF No. 27) pursuant to Federal Rule of Civil Procedure 12(f) in regards to Defendants' Answer to the Second Amended Complaint (ECF No. 26). Plaintiff challenges the Answer on the grounds that the affirmative defenses raised by Defendants lack a sufficient factual basis under the heightened pleading standard of *Bell Atlantic v.*

*Twombly*, 127 S. Ct. 1955 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  Plaintiff claims that because the responsive pleading does not contain sufficient facts to make it plausible on its face, it does not meet the standard of Federal Rules of Civil Procedure 8 and 9.  In response, Defendants contend that their affirmative defenses are sufficiently supported when taken in conjunction with the other factual assertions contained in the Answer.  The parties' submissions have been reviewed and no hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md. 2011).  Given affirmative defenses one through five are simple denials of liability and affirmative defense six is sufficiently supported, Plaintiff has failed to show that she has suffered any prejudice.  As a result, Plaintiff's Motion to Strike (ECF No. 27) is DENIED.

BACKGROUND

Plaintiff Terry Lee Nickens was an employee of Defendant SECU from August 1995 until her termination in June 2012.  Plaintiff was hired by Defendant SECU as a part-time teller in August 1995, but was eventually retained as a full-time employee following her completion of a ninety-day probationary period.  Sec. Am. Compl., 5, ECF No. 25.  During her seventeen years of employment, Plaintiff received numerous promotions, eventually becoming a Lead Financial Services Counselor ("Lead FSC") for her specific branch.  *Id.*  Plaintiff also claims that prior to her termination, she received a plethora of awards and personal commendations.  *Id.*

The discriminatory conduct allegedly began in 2008 upon the implementation of the "Different Direction" program by the CEO of SECU, Rodney Staatz.  *Id.*  Specifically, Plaintiff claims that the slogan was adopted as part of a program to target and terminate

both elderly and African-American employees.[1]  *Id.*  Plaintiff also claims that as part of the "Different Direction" strategy, Defendant SECU announced in August 2012 that it would transfer one third of its workforce to a servicing company, "S3".  *Id.* at 10.  In being transferred, Plaintiff contends that former SECU employees had to reapply for their jobs and lost seniority, retirement, and other employment benefits.  *Id.* at 10–11.

Following the forced retirement of Patricia Brune, who was a Lead FSC and Plaintiffs immediate supervisor, Defendants Carlos Edwards and Tracey Tempelton-Shank, allegedly gave all of Ms. Brune's responsibilities to Plaintiff.  *Id.*  It is further alleged that Defendants neither increased Plaintiff's pay, nor relieved her of any prior responsibilities in exchange for these new undertakings.  *Id.*  Despite attempting to satisfy all of the new responsibilities, Plaintiff was subsequently disciplined in an undisclosed manner by Defendants Edwards and Templeton-Shank for poor performance.  *Id.* at 6–7.  Plaintiff contends that this reallocation of responsibilities was designed to force her to resign, in keeping with the company wide attempt to hire younger, Caucasian individuals.  *Id.* at 7.

After opting to abolish the position of "Lead FSC" upon the firing of Ms. Brune, Defendant SECU decided to re-establish it in 2010.  *Id.*  Plaintiff interviewed for the position in July 2010, following the encouragement of Defendants Edwards and Templeton-Shank.  *Id.*  Plaintiff was eventually hired as a Lead FSC in October 2010, a

---

[1] In terms of age discrimination, Plaintiff claims that the implementation of the "Different Direction" strategy resulted in older employees being replaced by employees under the age of forty. Sec. Am. Compl., 6, ECF No. 25.  Specifically, Plaintiff maintains Defendants forced her immediate supervisor, Patricia Brune, to retire in September 2008.  *Id.*  In terms of race discrimination, Plaintiff alleges Defendants' program was successful in terminating a number of exceptional African-American employees in its Columbia, Baltimore, Gwynn Oak, and Linthicum, Maryland branches.  *Id.*  Specifically, Plaintiff contends that Defendants terminated Security Manager Carla Nelson under the guise that the position had been abolished.  *Id.* Following her termination, the Security Manager position was filled by a young Caucasian employee with less experience.  *Id.*

3

promotion from her previous position as a Senior FSC.[2]  *Id.*

Upon being hired as a Lead FSC, Plaintiff claims she was unfairly targeted by Defendants and disciplined for relatively minor or common infractions.[3]  Plaintiff was eventually terminated on June 4, 2012, after she removed a hold on an account without prior authorization.  *Id.* at 9.  The removal of the hold allegedly caused SECU to experience a loss of one thousand nine hundred dollars ($1,900).  *Id.*  Plaintiff was informed of her termination and escorted from the property following an informal meeting between her and Defendants Edwards and Templeton-Shank.  *Id.*  Plaintiff cites numerous instances where younger employees made similar mistakes but were not disciplined.[4]  *Id.* at 8–11.  Plaintiff further notes that she was successful in her claim for unemployment due to Defendants' failure to show that she was terminated with cause.  *Id.* at 8.

Plaintiff originally filed a fifteen-count Second Amended Complaint on October 23, 2013 seeking back pay, front pay, lost benefits, compensatory damages, punitive damages, and the sanitization of her personnel employment record, claiming that her termination was the result of both institutional and individual discrimination based on her age and race.  *Id.*

---

[2] Although Lead FSC was apparently a more prestigious position, which entailed additional responsibilities, it only paid six hundred dollars more annually than Plaintiff's prior position. Sec. Am. Compl., 7, ECF No. 25. Moreover, the responsibilities given to Plaintiff as a Lead FSC were apparently equal to the responsibilities Plaintiff had as a Senior FSC following the termination of Ms. Brune. *Id.*  Therefore, it is contended that Plaintiff performed the duties of a Lead FSC for three years without just compensation or administrative support. *Id.*

[3] Plaintiff was first disciplined in the latter portion of 2011, after failing to pick up debris which had fallen from the ceiling. Sec. Am. Compl., 8, ECF No. 25.  Plaintiff contends that this discipline was unfair, given that Defendant Edwards likewise failed to address the issue despite being able. *Id.*  As punishment, Plaintiff was placed on a Performance Improvement Plan ("PIP"), which she claims is a tantamount to a "final notice before termination." *Id.*

[4] The worst of these alleged instances of indiscretion, perpetrated by Defendant Edwards on or around April 2013, could have potentially cost SECU in excess of one hundred thousand dollars ($100,000). Sec. Am. Compl., 10, ECF No. 25.

4

Defendants responded on December 23, 2013, filing an Answer to the Second Amended

Complaint.  Answer Sec. Am. Compl., ECF No. 26.  In terms of form, the Answer contains

admissions and denials of specific paragraphs of the Second Amended Complaint and

concludes with a number of affirmative defenses.  *Id.*    The section containing the

affirmative defenses reads as follows:

> FIRST DEFENSE
> The Second Amended Complaint and each of the purported claims for relief
> asserted against the Defendants fails to state a claim upon which relief can be
> granted and/or fails to allege facts sufficient to constitute a cause of action
> against the Defendants.
>
> SECOND DEFENSE
> The Defendants did not commit the wrongs as alleged.
>
> THIRD DEFENSE
> The Defendants are not legally responsible for any injuries or damages
> allegedly sustained by Plaintiff about which she complains.
>
> FOURTH DEFENSE
> No act or omission on the part of the Defendants caused or contributed to
> any of the injuries or damages claimed by Plaintiff and, therefore, Plaintiff is
> not entitled to recovery from the Defendants.
>
> FIFTH DEFENSE
> Any injuries and damages alleged to have been suffered or incurred by
> Plaintiff resulted from the acts and omissions of persons or entities which are
> not parties to this action or for which the Defendants cannot be held legally
> responsible.
>
> SIXTH DEFENSE
> Plaintiff's claims are barred in whole or in part by the applicable statute of
> limitations.

*Id.* at 25–26.  Plaintiff then filed a Motion to Strike on January 3, 2013, requesting this

Court to strike the affirmative defenses under Federal Rule of Civil Procedure 12(f) for

failing to comply with the pleading requirements of Federal Rules of Civil Procedure 8 and

9.  Mot. Strike Answer Sec. Am. Compl., ECF No. 27.  In response, Defendants claim that the denial of allegations in the Second Amended Complaint is sufficient to satisfy the heightened pleading standard in regards to the affirmative defenses.  Resp. Mot. Strike, ECF No. 33.

STANDARD OF REVIEW

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Thus, a defense may be excised if it does not meet the pleading requirements of Rules 8 and 9. *Haley Paint Co. v. E.I. Du Pont De Nemours & Co.,* 279 F.R.D. 331, 335 (D. Md. 2012) (citing *McLemore v. Regions Bank,* 2010 WL 1010092 (M.D. Tenn. Mar. 18, 2010)).  The district court enjoys wide discretion in determining whether to strike an affirmative defense under Rule 12(f) in order "to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial." *Id.* at 336 (D. Md. 2012) (quoting *Hayne v. Green Ford Sales, Inc.,* 263 F.R.D. 647, 649 (D. Kan. 2009)).

In order for a pleading to be valid under Rule 8(b) of the Federal Rules of Civil Procedure, it "must state in short and plain terms its defenses to each claim asserted against it," and "admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P. 8(b).  Moreover, under Rule 8(c) of the Federal Rules of Civil Procedure a responsive pleading must "affirmatively state any avoidance or affirmative defense," which would defeat or mitigate the legal consequences of otherwise unlawful conduct. Fed. R. Civ. P. 8(c).

This Court has held that affirmative defenses are subject to the pleading

6

requirements articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*, making it so that affirmative defenses must be pled in such a way as to "ensure that an opposing party receives fair notice of the factual basis for an assertion contained in a [ ] defense." *Bradshaw v. Hilco Receivables, LLC*, 725 F. Supp. 2d 532, 536 (D. Md. 2010). While this standard "does not require the assertion of all supporting evidentiary facts," it does require that, "[a]t a minimum, [ ] some statement of the ultimate facts underlying the defense . . . must be set forth, and both its non-conclusory factual content and the reasonable inferences from that content, must plausibly suggest a cognizable defense available to the defendant." *Ulyssix Techs., Inc. v. Orbital Network Engineering, Inc.*, 2011 WL 631145, at *15 (D. Md. Feb. 11, 2011) (citation omitted).

Nevertheless, the United States Court of Appeals for the Fourth Circuit has noted that Rule 12(f) motions are generally viewed with disfavor "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Dawson v. Winter,* 2007 U.S. Dist. LEXIS 3995, *8 (D. Md. 2007), *aff'd* 2008 U.S. App. LEXIS 10225 (4th Cir. 2008) (citing *Waste Mgmt. Holdings, Inc. v. Gilmore,* 252 F.3d 316, 347 (4th Cir. 2001) (internal citations and quotations omitted)). Accordingly, "in reviewing motions to strike defenses, federal courts have traditionally 'view[ed] the pleading under attack in a light most favorable to the pleader.' " *Palmer v. Oakland Farms, Inc.,* 2010 U.S. Dist. LEXIS 63265, at *4, 2010 WL 2605179 (W.D. Va. June 24, 2010) (internal quotation omitted). Moreover, motions under Rule 12(f) usually are "only granted when the challenged allegations 'have no possible relation or logical connection to the subject matter of the controversy' or 'cause some form of significant prejudice to one or more of

the parties to the action.' " *Moore v. Novo Nordisk, Inc.*, 2011 WL 1085650, *8 (D.S.C. Feb. 10, 2011) (citing 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* §§ 1380, 1382 (West 2009)).   Finally, when affirmative defenses are stricken, the defendant should normally be granted leave to amend. *Banks v. Realty Mgmt. Serv.,* 2010 U.S. Dist. LEXIS 7501, at *3, 2010 WL 420037 (E.D. Va. Jan. 29, 2010) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1381 (3d ed.2004)).

<u>ANALYSIS</u>

Plaintiff argues that each of the six affirmative defenses asserted by Defendants should be stricken for failing to meet the minimum pleading standards under Rules 8 and 9 of the Federal Rules of Civil Procedure.   Mot. Strike Answer Sec. Am. Compl., 1, ECF No. 27.   In terms of the sufficiency of pleading, Plaintiff contends that Defendant's responsive pleading does not meet the mandates of *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* because it does not contain specific facts supporting the affirmative defenses.   *Id.*   Defendants respond by stating that the specific admissions and denials contained in Section V of their answer provide enough facts to comply with the heightened pleading standard of *Twombly* and *Iqbal*.   Resp. Mot. Strike, 3–5, ECF No. 33.   Finding that the affirmative defenses are either substantially supported or fail to prejudice Plaintiff, Plaintiff's Motion to Strike is denied.

## I. Affirmative Defenses One Through Five

Plaintiff first seeks to have affirmative defenses one through five stricken for failing to meet the heightened pleading standards under *Twombly* and *Iqbal*.   Answer Sec. Am. Compl., 23–25, ECF No. 26.   On their face, it is clear that none of the listed affirmative

8

defenses can be considered true affirmative defenses according to Rule 8(c). *See* Fed. R. Civ. P. 8(c). Where traditional affirmative defenses can absolve an individual of liability regardless of actual wrongdoing, these allegations solely point out specific alleged defects in the Plaintiff's prima facie case. *See* Answer Sec. Am. Compl., 23–25, ECF No. 26. This Court has previously found that simple denials of liability fall outside of the definition of "affirmative defenses." *See, e.g., Haley Paint Co. v. E.I. Du Pont De Nemours & Co.,* 279 F.R.D. 331, 337 (D. Md. 2012) (holding that "Failure To State A Claim" was not technically an affirmative defense). However, despite being mislabeled, the assertion of defenses that are not truly "affirmative" is merely duplicitous and does not prejudice the opposing party. *Coach, Inc. v. Kmart Corporations*, 756 F. Supp. 2d 421, 431 (S.D.N.Y. 2010). Given all of these issues will continued to be litigated, are logically related to the proceedings, and Plaintiff has experienced no measurable prejudice, taking such a "drastic measure" under Rule 12(f) is clearly unnecessary. For these reasons, Plaintiff's Motion to Strike these five affirmative defenses is denied.

## II. Affirmative Defense Six – Statute of Limitations

Plaintiff also seeks to have the sixth affirmative defense stricken on the basis that the Answer to the Second Amended Complaint fails to allege sufficient facts to meet the heightened pleading standard. Unlike the previous "affirmative" defenses, the expiration of the applicable statute of limitations is a valid affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(c). Citing the rules of this Court, an affirmative defense pursuant to the expiration of the statute of limitations must "reference the appropriate statute of limitations or the operative dates." *Ulyssix Technologies, Inc. v.*

*Orbital Network Eng'g, Inc.,* No. ELH-10-2091, 2011 WL 631145 (D. Md. Feb. 11, 2011).  In addition, this Court has held that "Motions to strike under Rule 12(f) . . . should not be granted absent a showing of undue prejudice." *Provident Life & Acc. Ins. Co. v. Cohen*, 137 F. Supp. 2d 631, 632 (D. Md. 2001) (citing Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 at 647–51).

Applying this standard, it is clear that Defendants have included sufficient information to withstand the Motion to Strike.  In their Answer to the Second Amended Complaint, Defendants admitted that Plaintiff was employed by Defendant SECU for the relevant sixteen year period.  Answer Am. Compl., 4–5, ECF No. 26.  Specifically, Defendants admitted that Plaintiff was employed by Defendant SECU as a Senior FSC from January 1, 2005 to October 10, 2010 and a Lead FSC from October 11, 2010 until her termination on June 4, 2012.  *Id.* at 5.  While Defendants do deny that the events surrounding the alleged violations set forth in the Second Amended Complaint occurred, they clearly do not dispute that Plaintiff was employed by SECU when Plaintiff alleges the discriminatory conduct occurred.  *See id.* at 4–5.  For example, Defendants admit that Plaintiff was terminated on June 4, 2012 and that she was employed by SECU during the latter portion of 2011, when the incident involving ceiling debris occurred.  *See id.* Therefore, Defendants substantially complied with the mandate of *Ulyssix Technologies* by "referencing the operative dates."  Likewise, given Defendants have admitted to Plaintiff's employment with SECU during the relevant period, Plaintiff has not suffered any prejudice in her ability to rebut the affirmative defense stated by Defendants.  *Cf. Moore*, 2011 WL 1085650 at *8 (holding that a Motion to Strike under Rule 12(f) should only be granted

where the challenged allegations "cause some form of significant prejudice to one or more of the parties to the action.")

CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Strike the Second Amended Complaint (ECF. No. 27) is DENIED. A separate Order consistent with this Opinion will follow.

Dated: August 4, 2014

_____/s/_____
                    Richard D. Bennett
                    United States District Judge