IN THE UNITED STATES DISTRICT COURT OF MARYLAND

TERRY LEE NICKENS                        *
                                         *
              Plaintiff                  *
        v                                *
                                         *        CASE NO.:  1:13-cv-01430-RDB
SECU, *et al*                            *
                                         *
              Defendants.                *
                                         *
              *****************************************

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE COURT'S
DENIAL OF DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

Terry Lee Nickens, ("Plaintiff" or "Mrs. Nickens"), by and through her undersigned

counsel, respectfully submit this Memorandum of Points and Authorities in Support of Plaintiff's

Motion in Opposition to Defendants Motion for Summary Judgment. Because there are substantial

and substantive material facts that are disputed by the Parties, and the evidence in the records can

established the legal proof of Plaintiff's claims, the Defendants are not entitled to judgment as a

matter of law. This Court should therefore deny Defendants Motion of Summary Judgment and

grant Plaintiff her chance to present her legal proof before a jury.

**VOLUNTARY DISMISSAL**

Plaintiff hereby dismisses the following Counts in her Complaint:

**COUNT ONE- RACE
COUNT TWO- DISPARATE IMPACT –RACE
COUNT THREE-HOSTILE ENVIRONMENT BASED ON RACE
COUNT SEVEN-DISPARATE IMPACT- VIOLATION OF MARYLAND CODE 20-606
COUNT EIGHT- VIOLATION OF EQUAL PAY
COUNT NINE- DISPARATE TREATMENT –RACE
COUNT TEN- RESPONDEAT SUPERIOR
COUNT THIRTEEN-CIVIL CONSPIRACY
COUNT- NEGLIGENT HIRING AND RETENTION
COUNT FOURTEEN-DEPRIVATION OF EQUAL RIGHTS**

The Defendants Motion is moot as to these claims.

1

## STATEMENT OF DISPUTED FACTS

Plaintiff here incorporates her Statement of Disputed Material Facts. Concurrently with this brief, Plaintiff presents the court with fifty-seven (57) disputed material facts that underscore the need for a jury determination. For these reasons and for reasons discussed further below, a jury should hear the facts of this case and make a determination as to whether discrimination occurred here.

## STATEMENT OF THE CASE

Plaintiff's claims of discrimination rely heavily on very specific disputed facts and as such, this case should be determined by a jury. This action for declaratory, injunctive, monetary and other appropriate relief is brought by Plaintiff to redress intentional violations by defendant of rights secured to  the laws of the United States and the statutory and common law of the State of Maryland . This action arises under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. Sections 2000e et seq., ("Title VII"), this Court has supplemental jurisdiction over this matter pursuant to Md. State Government Code Ann. § 20 and Md. Code Ann., Cts. & Jud.  Proc. 6-102 and 6-103. 1.

This action gives rise to a cause of action , the Fair Labor Standards Act C 201 *et seq* , The Equal Pay Act, 42 U.S.C.A §§ 12101 et seq.("EPA"), and the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §626, et seq., and other State Law claims.

## STATEMENT OF FACTS

Ms. Nickens, was born on December 3, 1957. At the time of termination, she was 55 years of age. Ms. Nickens had been employed with Defendant SECU since August 1995, until her unlawful termination on June 4, 2012. Mrs. Nickens began her employment with SECU as a part-time teller. **See Plaintiff Depo. Trans. Pg. 22.** After her ninety (90) day probationary period, Mrs.

Nickens was promoted to full time employment and received a raise. During her almost seventeen (17) years of employment with SECU, Mrs. Nickens was an exemplary employee. Based on her diligence, professionalism and tact, she quickly moved up the Corporate latter. Mrs. Nickens also received numerous thank you notices from then SECU's former president Terry Hallak. Mrs. Hallack personally sent Mrs. Nickens numerous written thank you cards for Mrs. Nickens outstanding customer service as a result of receiving numerous customer comments about Mrs. Nickens work. Mrs. Nickens was a model employee.  **Exhibit C2-C12; C15-C20.**

Throughout her sixteen (16) year tenure, she was promoted eight times. On August 14, 1995, Plaintiff was hired in the position of a Supplemental Teller. On October 10, 1995, Plaintiff was promoted to the position of a Full Time Teller. On October 9, 1996, Plaintiff was promoted to the positon of Member Services Representative I. On March 7, 2001, Plaintiff was promoted to the position of a Member Services Representative II.  On March 14, 2002, Plaintiff was promoted to Member Services Representative III Assistant Loan Department Supervisor. **Plaintiff's Affidavit Pg. 1-2;  Exhibit C33.**

On or around January 2008, SECU began its campaign to target and terminate or force to resign employees over the age of 40 and/or who were African American. As part of this plan, SECU implemented a new slogan "Different Direction". **See Affidavit of Jerry Williams Pg. 10-14**

An addition to the aforementioned employees, Defendant Groshack (Causation) was the Regional Manager and was also responsible for supervising Edwards (African American) and Templeton-Shank (Caucasian). He was also in Plaintiff's direct chain of command. Mr. Groshack upon information and belief was brought in to further SECU's Different Direction approach. **See Plaintiff Depo. Trans. Pg. 176.**

SECU's new direction included replacing older employees with young Branch Managers, Managers and employees under the age of forty (40).  **See Affidavit of Jerry Williams Pg. 13**

SECU's new direction included, the targeting of employees who were African American for termination or constructive termination. Specifically, SECU terminated or forced to resign African American Managers in its Columbia, Maryland, Baltimore, Maryland, Gwynn Oak, Maryland and Linthicum, Maryland branches. Upon information and belief these employees had tenure well beyond ten (10) years and were exemplary employees. In addition, they terminated all African American employees in the Security Department and replaced those employees with young Caucasian employees. **Affidavit of Jerry Williams Pg. 13. See also Nickens Depo. Trans. Pg 105-109; 224-227.**

On or around September 2008, Plaintiff immediate Supervisor Patricia Brune over the age of 40, was forced to retire because of the new direction strategy employed by SECU. It was at this time that, Defendant Carlos Edwards and Tracy Templeton-Shank, added all of Mrs. Brune's employment responsibilities to Mrs. Nickens' quite already lengthy job description. At no time did Defendant Edwards or Templeton-Shank provide Plaintiff with additional pay, they simply told Plaintiff that the position of Supervisor had been abolished companywide and that Plaintiff would now have to perform these numerous additional duties and would be held responsible for said duties. **Affidavit of Terry Nickens Pg. 2-3.  See Nickens Depo. Trans. Pg 50-52; 60-63; 67-70; 83; 94-95.**

Plaintiff performed the duties to the best of her abilities, although she was still being held responsible for all the many duties which were apart of her position as a Sr. FSC. Despite her good faith efforts to juggle both responsibilities, she was subsequently disciplined by Edwards and Templeton-Shank for not being able to perform the work of two (2) employees. **Affidavit of Terry Nickens Pg. 2-3; See Nickens Depo. Trans. Pg 60 – 63; 94-95;**

4

Despite Defendant SECU's, Edwards's , Grosshack's and Templeton-Shank's attempt to force Plaintiff to quit, she held steadfast and was determined to show SECU that she would not be forced to resign her position.

Plaintiff was put on a Performance Improvement Plan (PIP) and successfully completed said plans. **See Nickens Depo. Trans. Pg 134.**

In July 2010, despite having been unfairly disciplined, Plaintiff interviewed for the position of Lead FSC, which Edwards and Templeton-Shank had informed her had been re-created. Mrs. Nickens was apprehensive regarding the position based on the prior conduct of the Defendants.  She was also encouraged to apply for the position by Defendants Edwards and Templeton-Shank. Mrs. Nickens interviewed for the position and was subsequently offered the position that she had performed for almost three (3) years without pay.  **Nickens Depo. Trans. Pg. 50-53.**

Mrs. Nickens was assured by Defendants Edwards and Templeton-Shank that she would have all of management support in the position and that they believed that she was well qualified. Based on these assurances, Mrs. Nickens accepted the position. **See Affidavit of Terry Nickens.**

During her almost two-year tenure as Lead FSC, Mrs. Nickens and employees over the age of forty (40), were unfairly targeted by SECU, Edwards, Templeton-Shank and Groshack. Defendant utilized the disciplinary process as a pretext for discrimination. She was placed on numerous performance improvement plans (PIP's) and despite their assurance, Management failed to give any support, but simply sought to develop a file so that they could eventually constructively terminate Plaintiff. **(See Affidavit of Terry Nickens Pg 3 – 4;  See Nickens Depo. Trans. Pg 60-61; Pg 72-73 and Jerry Williams )**

In  the early part of 2011, Plaintiff was in a meeting with Defendant Edwards regarding her staff and it was at this time that Defendant Edwards commented that he wished he could "fire" all

her staff and replace them with young and vibrant workers . **See Nickens Depo. Trans. Pg 235-237.**

In the latter part of 2011, Plaintiff was placed on a performance improvement plan (PIP) for not picking up **[p]ieces of the ceiling** which had fell as a result of a leak in the ceiling. The PIP is essentially a final notice before termination. It is also important to note, that weeks prior, Defendant Edwards had also left debris from the ceiling for hours before he finally picked it up. Upon information and belief, Defendant Edwards was not placed on a PIP nor was he disciplined. (**See Terry Nickens Affidavit Pg. 4 & Nickens Depo. Trans. Pg. 183.**

On June 4, 2012, Plaintiff was called into an unscheduled meeting with Defendants Edwards and Templeton-Shank and advised that SECU had decided to terminate her employment, because she removed a hold from an account causing SECU a loss of $1,900.00. They stated that they talked it over with the District Manager "Ellen" and that they decided it would be best to terminate Plaintiff's employment for cause. Plaintiff was handed a box of her artifacts and escorted across the floor and out the front door. Plaintiff denied the allegations made by Defendants Edwards and Templeton-Shank. **Nickens Depo. Trans. Pg. 195-197.**

In fact, SECU's HR Manager Pamela White, African American Female, Under the age 40, Edwards and Templeton-Shank, testified at a Maryland Department of Labor, Licensing and Regulations (DLLR) telephonic hearing, that Plaintiff had actually been terminated because two (2) of her employees made simple compliance errors and the fact that she allegedly removed a hold from an account. Mrs. Nickens was successful in her claim for unemployment based on SECU and Defendants Edwards and Templeton-Shank failure to meet their burden that Mrs. Nickens was terminated with cause.  **Nickens Depo. Trans. Pg. 195-197; Exhibit A1 - A10**.

Upon information and belief , SECU Employee B. Chona , female, under 40, white, forged her husband's signature on a loan that she acted as a loan counselor, which was contrary to

SECU"s established policy and a clear conflict of interest. Despite this willful violation of SECU's established policy, Mrs. Chona was not terminated. Instead she was promoted to a position of authority overseeing new accounts and loans.  **Nickens Depo. Trans. Pg. 250.**

Upon information and relief on around April 2013, Defendant Edwards once again broke company policy and released a hold from a check over $100,000.00. The check was subsequently returned as a stop payment, thus causing SECU a potential loss of over six figures. Upon information and belief, Mr. Edwards was not terminated and remains employed despite his grossly negligent conduct.  **Nickens Depo. Trans. Pg. 251-252.**

In furtherance of its "Different Direction" strategy, on August 16, 2012, SECU announced that it was transferring a third of its workforce to a servicing company by the name of S3. Per Defendant Staatz, the employees will need to reapply for their jobs. Upon information and belief, this means that SECU employees will lose seniority as well as retirement and other benefits. The Defendants Different Direction strategy has finally come full circle.  **See Jerry Williams Affidavit Pg 13.**

## STANDARD OF REVIEW

At the outset, Plaintiff rely on Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See _Celotex Corp. v. Catrett_, 477 U.S. 317, 322-23 (1986).

In determining whether genuine and material factual disputes exist, thereby precluding summary judgment, a court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. _Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 475 U.S.

574, 587-88 (1986); *Deans v. CSX Transportation, Inc*., 152 F.3d 326, 330-31 (4th Cir. 1998)(evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his or her favor). The facts must be viewed in the light most favorable to and all reasonable inferences must be drawn in favor of Mr. Pennington, the nonmoving party. See *White v. BFI Waste Services, LLC*, 375 F.3d 288, 294 (4th Cir. 2004). On a motion for summary judgment, the Court's role is to determine whether sufficient evidence has been presented to make a material issue of fact a proper jury question. *Anderson v.Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

Summary judgment is warranted only if a rational trier of fact could not find for the non-moving party in light of the record as a whole. Id.at 248-49. In making this assessment, "plaintiff's version of the facts must be accepted where the parties' versions conflict, at least to the degree that [his] allegations have support in affidavits, depositions or other documentary evidence." *Paroline v. Unisys Corp.,* 879 F.2d 100, 102-03 (4th Cir. 1989), vacated in part on other grounds, 900 F.2d 27 (4th Cir. 1990). Where there is sufficient probative evidence to support the non-movant's claim, the functions of weighing the evidence, judging the credibility of witnesses, and determining the truth of the matter are properly reserved for the jurors as the fact finders at trial. See *Anderson*, 477 U.S. at 249; *JKC Holding Co., LCC v. Washington Sports Ventures*, Inc., 264 F.3d 459, 465. (4th Cir. 2001). A material fact is one whose existence or nonexistence could result in a different jury verdict. *Anderson*, 477 U.S. at 248.

"**[M]otive is** often **the** critical issue" in a discrimination case. *Evans v. Technologies Applications & Serv. Co.,* 80 F3d 954, 958-59 (4th Cir. 1996)(emphasis added). Therefore, "courts must take special care when considering a motion for summary judgment" in these cases. *Id.* Where the evidence presents a sufficient disagreement on such a material issue of fact, submission to a jury is required. *See Anderson*, 477 U.S. at 251-52. "'If reasonable minds could differ as to the

import of the evidence,' summary judgment is inappropriate." *Quick v.Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996).

A motion for summary judgment is not appropriate where there is (1) direct evidence of **discrimination under the ordinary standards of proof,** or (2) under the system of shifting evidentiary burdens established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 93 S. Ct. 1817 (1973). In this instance plaintiff can satisfy both.

Federal Courts strongly disfavor summary judgment in employment discrimination cases, where motive and intent are at issue.   Intent and motive must be ascertained through cross-examination of the decision-makers and other witnesses regarding the Defendant's purportedly non-discriminatory reasons for the adverse action.   Live witnesses must be subject to cross-examination before a jury to determine motive and intent. *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23 (1st Cir. 2001); *James v. Sheahan*, 137 F.3d 1003 (7 Cir. 1998); *Senner v. North Central Tech. College*, 113 F.3d 750 (7 Cir. 1997), *Wohl v. Spectrum Mfg.*, 94 F.3d 353 (7 Cir.1996), *reh, en banc, den* 1996 U.S. App. LEXIS 30599; *Webb v. Garelick Mfg. Co*., 94 F.3d 484 (8 Cir. 1996); *Bohac v. West,* 85 F.3d 306 (7 Cir. 1996); *Randle v. City of Aurora*, 69 F.3d 441 (10 Cir. 1995); *Collier v. Budd Co*. 66 F.3d 886 (7th Cir.1995); *Perdomo v. Browner,* 67 F.3d 140 (7th Cir. 1995); *Barnhart v. Mack Trucks*, 157 FRD 427 (N.D. Ill.1994), *affd without op* 52 F.3d 328 (7th Cir.1995); *Kralman v. Illinois Dep't of Veterans' Affairs*, 23 F.3d 150 (7th Cir. 1994), *reh den*., 1994 U.S. App LEXIS 13376, *cert den*., 513 U.S. 948; *Courtney v. Biosound*, Inc. 42 F.3d 414 (7th Cir.1994); *Batey v. Stone*, 24 F.3d 1330 (11th Cir. 1994); *Sarsha v. Sears, Roebuck & Co*. 3 F.3d 1035, *reh, en* banc*, den* (7th Cir. 1993) 1993 U.S. App. LEXIS 27267; *Piesco v. New York, Dep't of Personnel*, 933 F.2d 1149 (2nd Cir. 1991), *cert den* 502 U.S. 921 (1991); *Rosen v. Thornburgh*, 928 F.2d 528 (2nd Cir. 1991).

**ARGUMENT**

*a.*     **PCOUNTS IV AND V OF PLANITFF'S AMENDED COMPLAINT ALLEGING WRONGFUL TERMINATION SHOULD NOT BE DISMISSED BECAUSE PLAINTIFF'S TERMINATION WAS IN VIOLATION OF PUBLIC POLICY AND THEREFORE WRONGFUL**

To establish a claim for wrongful discharge in Maryland, an employee must prove by a preponderance of the evidence that (1) the employee was discharged; (2) the discharge violated a clear mandate of public policy; and (3) there is a nexus between the employee's conduct and the employer's decision to fire the employee. See *Wholey v. Sears Roebuck*, 803 A.2d 482, 489 (Md. 2002). A public policy is a "principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public, or against the public good." *Adler v. American Standard Corp*., 432 A.2d 464, 467 (Md. 1981).

Maryland courts have found violations of a clear mandate of public policy in two sets of circumstances: (1) where an employee has been terminated for refusing to violate the law or the legal rights of a third party; and (2) where an employee has been terminated for exercising a specific legal right or duty. *King,* 866 A.2d at 901-02. Maryland courts have generally confined the scope of public policy to "preexisting unambiguous and particularized pronouncement[s]" by state and federal constitution, enactment or prior judicial decisions that prohibit, direct, or protect the conduct in question. *Porterfield v. Mascari II, Inc*., 788 A.2d 242, 245 (Md. Ct. Spec. App. 2002). Though the U.S. Constitution may serve as a basis for public policy, federal regulations and consent decrees do not establish public policy for the purpose of a wrongful termination claim in Maryland. See *Szaller v. American Nat'l Red Cross,* 293 F.3d 148, 151-52 (4th Cir. 2002) (FDA regulations and consent decree between FDA and Red Cross regarding proper blood handling procedures did not support a claim of wrongful discharge.) *See King v. Marriott Int'l Inc*., 866 A.2d 895, 902 (Md. Ct. Spec. App. 2005) (public policy mandates supporting wrongful discharge

claims have been found in federal statutes); *Higgins v. Food Lion, Inc*., No. CIV. A. AW00CV2617, 2001 WL 77696, at *4 (D. Md. Jan. 23, 2001) (conduct which violates federal statute may violate clear mandate of public policy) (citing *Watson v. Peoples Sec. Life Ins. Co.*, 588 A.2d 760 (Md. 1991); *McKelvey v. Canteen Corp*., Civ. A. No. HAR 93–2474, 1994 WL 149606, at *8 (D. Md. Feb. 16, 1994) (plaintiffs may rely on federal law as source of public policy of state common law tort of wrongful discharge); *Lee v. Denro, Inc*., 605 A.2d 1017, 1021 (Md. Ct. Spec. App. 1992) (assuming without deciding that employee can base claim for wrongful discharge under Maryland law on asserted violation of public policy exhibited by violation of federal statutes); *Adler v. Am. Standard Corp*., 538 F. Supp. 572, 578 (D. Md. 1982), aff'd in part. rev 'd in part on other grounds, 830 F.2d 1303 (4th Cir. 1987)(finding no merit to defendant's arguments that plaintiff may not rely on federal law as source of the public policy contravened by discharge).

Plaintiff claim for wrongful termination is predicated on violation of Maryland State Government Article §20-606 and should be allowed to proceed.

**c.** **SUMMARY JUDGMENT IS NOT APPROPRIATE ON COUNT XI: AGE DISCRIMINATION IN VIOLATION OF ADEA BECAUSE THERE MATERIAL FACTS IN DISPUTE AND DEFENDANT IS NOT ENTITLED TO JUDMGNET AS A MATTER OF LAW.**

The defendants contend that it cannot be held liable for Nickens' ultimate termination because it had a legitimate nondiscriminatory reason for her termination, i.e. that she was not adequately performing her job.

The US Supreme Court has held that "If an employment discrimination plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case under McDonnell Douglas standard. *Swierkiewicz v. Sorema, N.A*., 534 US 511(2002). See also, *Hylind v. Xerox Corp*., 380 F. Supp. 2d 710, (D.Md. 2005). Under this

Court's persuasive authority, direct evidence "describes a relationship between proof and incidents and is not a characterization of the proof itself, but is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wagner v. Dillard Department Stores, Inc.* 2001 WL 967495 (4th Cir. 2001).

The ADEA of 1967 prohibits employers from "fail[ing] or refus[ing] to hire ... any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a) (1). The ADEA protects individuals who are forty years of age or older. 29 U.S.C. § 631(a). To succeed on an ADEA claim, plaintiffs "must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision."

The ADEA was enacted in 1967 to promote the employment of older persons based on their ability rather than their age and to prohibit arbitrary age discrimination in employment. 29U.S.C. § 621(b).

Remedies for violation of the Act are provided in Section 626(b) which provides in part:

"In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section."

See *Duke v. Uniroyal Inc., 928* F.2d 1413, 1418 (4th Cir. 1991) (emphasis added).

Generally speaking, to establish a prima facie case of unlawful age discrimination, [a plaintiff] must show that (1) she is a member of the protected class; (2) she was qualified for the job and met [the employer's] legitimate expectations; (3) she was discharged despite her qualifications and performance; and (4) following her discharge, she was replaced by a

substantially younger individual with comparable qualifications." _Warch v. Ohio Cas. Ins. Co._, 435 F.3d 510, 513 (4th Cir.2006).

After the plaintiff establishes a prima facie case, the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp., 411 U.S. at 802. If the defendant offers a nondiscriminatory reason for its actions, the burden returns to the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." _Tex. Dept. of Cmty. Affairs v. Burdine_, 450 U .S. 248, 253 (1981).

### MRS. NICKENS IS A MEMBER OF THE PROTECTED CLASS

It is undisputed by the parties that Plaintiff was over the age of forty (40), therefore a member of the protected class.

### MRS. NICKENS WAS QUALIFIED FOR THE JOB AND MET [THE EMPLOYER'S] LEGITIMATE EXPECTATIONS.

Plaintiff presents competent evidence that employees under the age of 40, engaged in nearly identical, and in some cases worse, misconduct as what Plaintiff was accused of, and yet, were not discharged from employment. Plaintiff also presents competent evidence that Defendant's reasons are not worthy of credence.

Plaintiff has a history of promotions, good performance reviews and accolades. On August 14, 1995, Plaintiff was hired in the position of a Supplemental Teller. On October 10, 1995, Plaintiff was promoted to the position of a Full Time Teller. On October 9, 1996, Plaintiff was promoted to the positon of Member Services Representative I. On March 7, 2001, Plaintiff was promoted to the position of a Member Services Representative II.  On March 14, 2002, Plaintiff was promoted to Member Services Representative III Assistant Loan Department Supervisor.

Mrs. Nickens' 16years of performance evaluations, promotions and accolades, alone are enough to defeat a motion for summary judgment.  Clearly, sixteen years of good performance

indicates excellent work.   The work performance criticisms that the Defendants claims Mrs. Nickens' termination, was based upon purported deficiencies, i.e. PIPs, administered to Ms. Nickens' while under the supervision of Defendants' Edwards and Templeton-Shank.

Defendant claims that Mrs. Nickens' work performance, under a new supervisors, for this two year period, constitutes a legitimate, non-discriminatory reason for Mrs. Nickens termination from SECU, after 16 years of documented "exceptional" service to SECU.

In *Platero v. Williams Field Services Company*, 2004 U.S. App. LEXIS 10473 (10th Cir. 2004), the *Tenth Circuit* reversed the district court's grant of summary judgment, finding that:

> every criticism in the RWRR is facially inconsistent with, if not in flat contradiction of, ratings plaintiff received from her supervisor for job performance and professional development during the year immediately preceding the RIF.

A plaintiff can show pretext by revealing "weaknesses, implausibilities, inconsistencies, [such] that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason.  The Court held that "the numerous inconsistencies between plaintiff's performance evaluations give rise to a triable issue of pretext precluding summary judgment." As in *Platero*, Ms. Nickens' prior promotions, performance evaluations and accolades alone should preclude summary judgment for the Defendant.

Defendants' alleges that Plaintiff was terminated for previous PIPs, because she removed a garnishment from an account and because she allowed three (3) loans to be processed with zero interest rates. The Defendant articulated reason is unworthy of credence. On June 18, 2012, Plaintiff appeared telephonically with the Department of Labor, Licensing and Regulation ("DLLR"), along with Defendant Carlos Edwards, for a hearing on her qualifications for

unemployment. During his testimony, Mr. Edwards testified to the reasoning Mrs. Nickens was terminated.  Specifically:

> **"There were two incidents that caused her discharge. Both of these involved a monetary loss to the company and were discovered close together.  The first involved the claimant signing off on a check to close an account that was flagged for garnishment. She initialled[sic] the approval for this, which resulted in a $1900.00 loss. This weighted heavily in the decision to terminate her she should've seen that this had a garnishment attached to the account. The second was that the claimant (Ms. Nickens) failed to input the interest rate on three different loans. This caused no interest rate to accrue until it was discovered, resulting in approximately a $600.00 loss."**

> *See Exhibit A3-A4*

Plaintiff prior PIPs were not a determining or motivating factor, because, despite having them in her personnel file, Plaintiff was still promoted to Financial Services Consultant Team Leader. Moreover, it is undisputed that Plaintiff successfully completed the plans. It is important to note that, Plaintiff was forced to perform the jobs of two (2) employees and then unfairly disciplined when she could not perform those functions satisfactory.  Moreover, its is important to note that Bryant Mayes was the person that allowed  two (2) loans to be processed with a zero interest rate, for which Plaintiff was terminated. **(Exhibit G4)**

Mrs. Nickens was unlawfully terminated for inadvertently removing a hold from an account, because she did not see a flag placed on it. **Exhibit A2-A3**

Defendants' Edwards and Shank, <u>engaged in willful misconduct</u>, but was not terminated. In the early part of 2011, Defendant Edwards and Templeton-Shank willfully broke company policy and cashed money orders totaling $4,000.00 for a non-member. Subsequently, the money

orders came back as fraudulent, thereby causing SECU a loss. It is SECU's policy that all money-orders and checks over a certain amount for non-members not be cashed. The Defendants willful and knowing failure to follow SECU's policy was a security breach and serious compliance issue. Despite the seriousness as stated, Edwards and Templeton-Shank were not terminated and as of this writing still maintain their employment with SECU. **Exhibit B6.**

On July 12, 2014 Mr. Edwards repeated the same behavior wherein he removed a hold from an account. Mr. Edwards was not terminated, despite his infraction being a serious breach of SECU's security policy.  **Exhibit B17**

## CARLOS EDWARDS DISCIPLINARY RECORD

| *Date* | *Type of  Violation* | *Sanction* |
|---|---|---|
| **12/31/2007** | **Unsatisfactory Performance Review** | **None** |
| **2009** | **Unsatisfactory Performance Review** | **PIP** |
| **2009** | **PIP** | **None** |
| **03/11/2009** | **Failed to comport himself with PIP** | **None** |
| **02/2011** | **Removed hold from an account** **Cashed fraudulent money-orders** **<u>Willfully</u> violated Company Policy** | **PIP** |
| **07/31/2014** | **Loss incurred of $1910.00** **Assisted two non members in violation** **-of company policy with cashing drafts** **-directly from a member account.** | **PIP** |

## TERRY NICKENS DI DISCIPLINARY RECORD

| *Date* | *Type of  Violation* | *Sanction* |
|---|---|---|
| **05/2010** | **Unsatisfactory Performance Review** | **PIP** |
| **02/2011** | **Unsatisfactory Performance Review** | **PIP** |
| **05/2012** | **<u>Inadvertently</u> remove a hold from an Account** | **Termination** |

Mr. Edwards motives were clear with regard to his older workers. In a memorandum responding to his own personal PIP he indicated:

"I was also able to confirm that I have some employees that have been with company for years and aren't looking for advancement and want to stay in their current position until retirement" **Exhibit B2**

It was clear that Mr. Edwards did not want to the Plaintiff to stay in her current position until retirement.

### MRS. NICKENS WAS DISCHARGED DESPITE HER QUALIFICATIONS AND PERFORMANCE.

SECU's Corporate Designee testified that Plaintiff's lack of judgment was the reasoning for her termination. (See Defendants Motion @56 and Florio Deposition). SECU's position is unworthy of credence because, like Plaintiff, Edwards and Shank, engaged in similar and more severe conduct, yet were terminated. Plaintiff was terminated because she was over the age of forty (40).

### MRS. NICKENS WAS REPLACED BY A SUBSTANTIALLY YOUNGER INDIVIDUALS WITH COMPARABLE QUALIFICATIONS.

On August 6, 2012, Latasha Mejia (Age 29) and on December 31, 2012, Kristen Hayden (Age 32) were hired to replace the Plaintiff. See Answers to Interrogatories. **Exhibit F10**

In this case, Defendants in their motion for summary judgment purport to have produced non discriminatory reasons for the plaintiff's termination.

However, the proffered reasons were that she had a few Performance Improvement Plan ("PIP"), Overriding a Garnishment and no interest loans processed by subordinates. However, these preferred reasons are pretext for discrimination. As is evident from the evidence, Plaintiff had the PIPs when she was promoted to the position she was holding before her termination. Therefore, their excuse that the PIPs played any role in her termination is nothing but pretext.

Similarly, removing block on a garnished account cannot support the basis for Plaintiff's termination especially it is permitted or allowed, If it was true that the PIP were important and material, Plaintiff would not have been promoted.   Also, it is not uncommon to removed funds from an account that had a garnishment lockout placed on the account, for varying reasons, such as to pay for a loss that SECU has directly incurred or as a result of a member's need such as financial hardships. **See William's Affidavit Pg 6, ¶15**. Additionally, Mrs. Nickens was given the ability to perform such an override for the member, because it is generally in the ability of a SECU's leadership team member to make such decisions, based upon their authority level in the TCCUS operating system. If the authority had not been given to Mrs. Nickens, the TCCUS system would have required that a member of management with a higher authority level to override the transaction. **See William's Affidavit Pg 6, ¶16**. Moreover, Mrs. Nickens official title at the time of the override in question was Team Lead for the Financial Service Consultants, and the transaction in question was performed by a teller. There Teller was not sanctioned and Ms. Nickens Supervisors were not sanctioned. **See William's Affidavit, pg 6 ¶17.**

Moreover, SECU is incorrect that it suffered a loss of $1,900.00 because funds that are held due to a garnishment aren't debts owed to SECU Credit Union, unless they have been charged off due to a negative account held currently or previously with SECU Credit union. **See William's Affidavit Pg 7, ¶19.**

The final reasons SECU purports to be the non-discriminatory reason for Plaintiff's termination is zero interest loan by subordinates. The loan process involves a number of employees in various departments. When a SECU member applies for a loan, the loan is submitted to the Loan Center Department for a decision which would result in the loan being approved, denied or counter-offered with conditions.  **See William's Affidavit  Pg 9, ¶28**.  After that, SECU Branch personnel do not have the authority to determine interest rates, nor the conditions or terms

18

of the loan. **See William's Affidavit pg 10, ¶28-29**. As Mr. William's contend in his affidavit based on his knowledge of the SECU system and operation, the SECU the operating system operating system failed to implement the loan rate that was established by the loan officer at the time of the approval of the loan. **See William's Affidavit pg 10, ¶28.** The FSC who is responsible for the processing the loan in the operating system for members who apply directly in the branch or come into the branch to settle the loan directly, is responsible for making sure all of the loan conditions are met that were established by the loan officer and the loan department. **See William's Affidavit Pg 10, ¶29.** Once this process is completed there is a requirement that the loan is reviewed by a member of the FSC leadership team and/or a designated seasoned employee familiar with the loan verification process and this verification is done in the operating system before the loan then goes back to the FSC handling the loan and the loan is funded, if approved. **See William's Affidavit Pg, ¶30**.

As is often the case, the problem with zero interest or incorrect interest is not an unusual occurrence. See William's Affidavit §31. The error is usually detected within a reasonable amount of time by the Audit Department and corrected in the system before the member is notified of the error and they are held to the Promissory Note. Moreover, no employee has ever been terminated because error in loan document for zero interest. **See William's Affidavit Pg 11, ¶31**. More importantly, Plaintiff's subordinates that made the error in the loan documents were not terminated but Plaintiff was terminated. It clearly shows that the proffered reasons are not but a pretext.

Clearly, Plaintiff has produced sufficient evidence to negate the employers proffered reasons Plaintiff's termination.

The real question raised by Defendants Motion is what intent Defendant had in firing Mrs. Nickens. There are more than sufficient facts in the record showing discriminatory animus against

age, to require the question to be put to the jury; therefore, Defendant's Motion must be denied. It is the rare defendant in an employment discrimination or retaliation action which admits age animus or documents discriminatory/retaliatory intent. "[S]ummary judgment is generally inappropriate when motive, intent or state of mind is material." *Parkerson v. Federal Home Life Insurance Co.*, 797 F.Supp. 1308, 1315 (E.D. Va. 1992).

As the Court of Appeals held in *Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir. 1985), reversing summary judgment for the employer:

> "Care is required in deciding whether the evidence presents a genuine issue of motive, for 'summary judgment is seldom appropriate in cases where particular states of mind are decisive as elements of [a] claim or defense.' . . .Resolution of questions of intent often depends upon 'the credibility of the witnesses, which can best be determined by the trier of facts after observation of the demeanor of the witnesses during direct and cross-examination.'

In order to prevail on an ADEA claim, a plaintiff must prove that discrimination was "the but-for cause" of the adverse employment action. Arthur v. Pet Dairy, 593 F. App'x 211, 219 (4th Cir. 2015) (citing Gross, 129 S.Ct. at 2351 (emphasis supplied) (internal quotation marks omitted)). According to Gross v. FBL Financial Services, to show "a but-for causal relationship" for ADEA purposes the plaintiff must present evidence that discriminatory animus was a "necessary logical condition" for the adverse employment action and that the employer did not act "because" of other legitimate motivations for the action. 129 S.Ct. at 2351.

But, pursuant to *Gross*, for an event to be the "but-for cause," the Fourth Circuit has held it need not be the sole cause of the adverse employment action. Arthur, 593 F. App'x at 220 (citing Leal v. McHugh, 731 F3d 405, 415 (5th Cir. 2013)(concluding "the district court misread Gross, since but-for cause does not mean sole cause" (internal quotation marks omitted))). Age discrimination cases often present more than one reason for an employer to take adverse action against an employee, but an employee need not refute each negative mark on his record or every possible legitimate ground for the employment decision to avoid summary judgment. Id. Rather,

according to Gross, to prevail on summary judgment the employee must only demonstrate, age-related considerations aside, that under the circumstances these other nondiscriminatory grounds did not animate the employer to take the adverse employment action. Id. at 220 (citing Gross, 129 S.Ct. at 2350 (indicating that an employer acts "because of" age when "the employee's protected trait actually played a role in the employer's decision making process and had a determinative influence on the outcome" (emphasis omitted)) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993))). In other words, if there existed other legitimate motivations for the decision, the employee must offer sufficient evidence to show these factors were not "the reason" for the employer's decision. Id. (citing Gross, 129 S.Ct. 2343 (internal quotation marks omitted)). When evaluating ADEA cases on summary judgment, the focus should be whether the plaintiff has provided sufficient evidence to cast doubt upon the employer's stated reasons for the employment action, such that a reasonable juror may find age was the determinative factor in that decision. Id. at 221.

*d.*   **THE PLAINTIFF HAS STATED A CLAIM FOR HOSTILE WORK ENVIRONMENT BASED ON HER AGE**

To state a hostile work environment claim, a plaintiff must adduce evidence that: (1) he experienced unwelcome harassment; (2) the harassment was based   … age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *Bagir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006)(citing *See Causey v. Balog*, 162 F.3d 795, 801 (4th Cir.1998).

Defendant cannot challenge the fact that Plaintiff experienced hostile work environment based on the systemic actions by SECU of overloading Plaintiff with work meant for two positions and placing Plaintiff on PIP as a means of making the work place hostile. Plaintiff had an above

21

average evaluation until the new supervisor and management took over and engaged in action that made the work environmental hostile.

The Supreme Court in Harris v. Forklift Systems, Inc., 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), and Meritor Savings Bank v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), held that a plaintiff in a Title VII action need not prove "a tangible psychological injury" in order to prove the existence of a hostile work environment. Harris, 510 U.S. at 21, 114 S.Ct. at 370 (citing Meritor, 477 U.S. at 64, 106 S.Ct. at 2404). The rationale for this holding is that abusive work environments, even those that do not seriously affect an employee's emotional well-being, "can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." Harris, 510 U.S. at 22, 114 S.Ct. at 371. Thus a plaintiff has an actionable hostile work environment claim under Title VII "when the workplace is permeated with `discriminatory intimidation, ridicule, and insult'. . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'...." Id. at 21, 114 S.Ct. at 370 (quoting Meritor, 477 U.S. at 65, 67, 106 S.Ct. at 2405). In the instant case, while Plaintiff has stated sufficient facts to establish that the harassment was severe, she also suffered a psychological injury of depression, and anxiety. Therefore, the harassment were severe to constitute a hostile work environment.

c.   **PLAINTIFF REQUEST LEAVE TO AMEND HER COMPLAINT IN THE ALTERNATIVE IF THE COURT IS INCLINED TO AGREE WITH THE DEFENDANTS' THAT PLAINTIFF'S COMPLAINT IS DEFICIENT.**

Fed. R. Civ. P. 15(a)(1)-(2). "The federal policy of liberality in permitting amendments to pleadings, as embodied in [Fed. R. Civ. P. 15], is self-evident." *Davenport v. Ralph N. Peters & Co.*, 386 F.2d 199, 204 (4th Cir. 1967). [T]he general rule is that leave to amend a complaint

under Federal Rule of Civil Procedure 15(a) should be freely given, see _Foman v. Davis_, 371 U.S. 178, 182    (1962), unless "the amendment would be prejudicial to the opposing party, there has been bad   faith on the part of the moving party, or the amendment would have been futile," _Laber v. Harvey_, 438 F.3d 404, 426 (4th Cir. 2006) (internal quotation marks omitted)."

_Steinburg v. Chesterfield County Planning Com'n, 527_ F.3d 377, 390 (4th Cir. 2008). "It is this Circuit's policy to liberally allow amendment in keeping with the spirit of [Fed. R. Civ. P.] 15(a)." _Galustian v. Peter,_ 591 F.3d 724, 729 (4th Cir. 2010) (citing _Coral v. Gonse_, 330 F.2d 997, 998 (4th Cir. 1964)). "Motions to amend are typically granted in the absence of an improper motive, such as undue delay, bad faith, or repeated failure to cure a deficiency by amendments previously allowed." _Harless v. CSX Hotels, Inc_., 389 F.3d 444, 447 (4th Cir. 2004) (citing _Ward Elec. Serv., Inc. v. First Commercial Bank,_ 819 F.2d 496, 497 (4th Cir. 1987)).

Any amendment to the Complaint would not prejudice the Defendants'. If necessary, Plaintiff would seek leave add specificity to [her] allegations. This Court have stated in a situation where defendants' are aware of the circumstances giving rise to the action, no prejudice can be claimed." _Matrix Capital Management Fund, LP v. BearingPoint, Inc_., 576 F.3d 172, 195 (4th Cir. 2009) (citing _Edwards v. City of Goldsboro_, 178 F.3d 231, 243 (4th Cir.1999) (noting that merely adding specificity to allegations generally does not cause prejudice to the opposing party); _Davis v. Piper Aircraft Corp.,_ 615 F.2d 606, 613 (4th Cir.1980) ( "Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of defendant's case.")) (additional citation omitted).

Moreover, the legal claims presented in any proposed Amended Complaint are identical to those presented in the original Complaint and thus do not prejudice the Defendants.

It cannot be stated that any proposed amendment would be futile. Any proposed Amended Complaint would merely pleads facts that cure the facial deficiencies in Plaintiff's original complaint.

In light of the settled Supreme Court and Fourth Circuit precedent liberally applying the dictate of Fed. R. Civ. P. 15(a)(2) that "[t]he court should freely give leave when justice so requires," Plaintiff respectfully requests that this Honorable Court enter an order granting Plaintiff leave to file an amended complaint should the Court deem that Plaintiff's Amended Complaint it deficient in some manner.

The relevant facts alleged  will remain substantially the same, so the Defendants' would not be prejudiced by any amendments. There is no evidence before the Court indicating bad faith or undue delay by Plaintiff, and her amendments are not facially frivolous in light of the facts alleged.

## **CONCLUSION**

Plaintiff has demonstrated good cause for the Court to grant her motion for discovery and deny the Defendants' Motion to Dismiss or in the Alternative for Summary Judgment. The Court should meet the ends of justice and allow Plaintiff sufficient discovery before considering the Defendants' Motion to Dismiss or In the Alternative for Summary Judgment.

Respectfully Submitted,


_____/s/_____
Kim Parker, Esquire
Federal Bar No.: 23894
Raquel S. White, Esquire
Federal Bar No.: 16306

COUNSEL FOR PLAINTIFF

24

**IN THE UNITED STATES DISTRICT COURT OF MARYLAND**

| | |
|---|---|
| **TERRY LEE NICKENS** | * |
| | * |
| **Plaintiff** | * |
| **v** | * |
| | *  CASE NO.:  1:13-cv-01430-RDB |
| **SECU**, *et al* | * |
| | * |
| **Defendants.** | * |
| | * |

**<u>ORDER</u>**

Upon consideration of the Defendants for Summary Judgment and considering Plaintiff's Opposition,   it is hereby this _____day of _____, 2015, ORDERED, that the MOTION is DENIED.


**SO ORDERED**


Date: _____                    _____

                                         Judge Richard Bennett